FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

2016 FEB 23 P 3: 07

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| HANI FAROUK MARCO, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 1:16cv185 |
| MIG, LLC, d/b/a LEVANT, a/k/a | ) |
| LEVANT RESTAURANT & LOUNGE, | ) CGL/ JFA |
| *A Virginia Limited Liability Company,* | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, HANI FAROUK MARCO, by counsel, and for his

Complaint to obtain legal and equitable relief against defendant, MIG, LLC, d/b/a

LEVANT, respectfully says as follows.

### Nature of the Action

1.     Plaintiff Hani Farouk Marco brings this action for legal and equitable

relief to correct and remedy Defendant's unlawful, discriminatory and retaliatory

employment practices during the course of, and in the termination of, his employment

with the Defendant, and to make him whole and compensate for Defendant's violations

of the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*

(the "ADA") and Title I of the Civil Rights Restoration Act of 1991, and Title VII of the

Civil Rights Act of 1964, as amended.

### Jurisdiction and Venue

2.     Jurisdiction is founded in this case is founded upon 42 U.S.C. § 12117,

which incorporates by reference 42 U.S.C. § 2000e-5(f)(1) [the Title VII procedures and

remedies] and (3), pursuant to 42 U.S.C. § 1981a.

1

3.     The unlawful employment practices complained of herein occurred, and the employment records relevant to this matter, if any, are maintained and administered, in Fairfax County, in the Eastern District of Virginia, and upon information and belief, the majority of witnesses and events and records related to this matter are found in and around Fairfax County, Virginia.

<u>Parties</u>

4.     Plaintiff is a forty-year old male.  At all times of his life, Plaintiff was born, and remains, an Egyptian-born, practicing Christian, who has often been mistaken for an Egyptian Muslim.  At all times relevant hereto, Plaintiff was and is an asylee to the United States, from Egypt, and was and is a Permanent Resident of the United States, intending to obtain U.S. Citizenship status.  At all times relevant to this action, Plaintiff was and is a resident of Vienna, Virginia.  Plaintiff was denied equal employment opportunities and otherwise retaliated against because of both the past and future need to accommodate his disabilities, and because of his religion, Christian.

5.     Upon information and belief, at all times relevant hereto, the Defendant was and is a Limited Liability Company organized and existing under the laws of the Commonwealth of Virginia, with principal offices and restaurant and shi-sha lounge (hookah lounge) location at 8411 Old Courthouse Road, Vienna, VA  22182.  Upon information and belief, in addition to running a restaurant and hookah lounge, Defendant purports to be involved in "Business & Investment."

6.     Upon information and belief, at all times pertinent hereto, Defendant MIG, L.L.C.,  was, and is, and has been an employer engaged in an industry affecting commerce with at least twenty-five (25) employees for each working day in each of

2

twenty or more calendar workweeks in each relevant calendar year, and is a covered employer entity within the meaning of the ADA and Title VII.

<u>Administrative Exhaustion</u>

7.     On or about August 27, 2015, Plaintiff filed an intake, and on or about September 5, 2015, Plaintiff timely filed a charge of discrimination, against the Defendant ,with the U.S. Equal Employment Opportunity Commission (EEOC), which charge was, upon information and belief, also dual filed with the Fairfax Office of Human Rights & Equity Programs, pursuant to a work sharing and deemed filing agreement between the EEOC and the Fairfax County Office of Human Rights & Equity Programs.  Plaintiff's charge of discrimination included the discrimination complained of herein, and discharge from employment, based on retaliation for his accommodation-seeking behaviors, discrimination on the basis of his disability, and discrimination on account of his Christianity.

8.     Thereafter, upon information and belief, on or about October 6, 2015, a representative of the EEOC signed, and on or about December 4, 2015, the EEOC mailed to Plaintiff, a Notice of Right to Sue with respect to said Charge of Discrimination, advising Plaintiff that he had 90 days from the date of his receipt of said Notice, within which to institute his suit under Title VII and the ADA.  Plaintiff received the Notice of Right to Sue on December 7, 2015, and your Plaintiff has thusly instituted this action within 90 days of the date of his receipt of the said Notice of Right to Sue.  A copy of the said Dismissal and Notice of Suit Rights ("Notice of Right to Sue"), and the envelope in which it was mailed from the EEOC to the Plaintiff, are attached, at **Exhibit #1**.  Said Notice of Right to Sue incorrectly references that that document having been mailed to

Plaintiff on or about October 6, 2015. As referenced above, Plaintiff received the said notice, bearing the 10/6/15 date, on December 7, 2015.

9.      All administrative conditions precedent to the filing of this lawsuit, to the extent necessary, have been performed, or have occurred.

10.     The claims presented herein arose within this judicial district and the Defendant entities reside and do business within this judicial district.

<u>Operative Facts</u>

11.     Plaintiff was employed by Defendant as a First Cook at Defendant's Tysons Corner, Virginia restaurant facility, located at 8411 Courthouse Road, Vienna [Tyson's Corner], VA  22182, beginning on or about May 18, 2015, to work a forty-hour workweek.

12.     At all times referenced herein, Plaintiff performed his duties in a consistently competent, if not exemplary manner, during her employment with the Defendant. Plaintiff met all legitimate expectations of the Defendant with respect to his employment.

13.     Prior to being employed by Defendant, Plaintiff had previously been diagnosed with depression, anxiety, and bipolar disorder.

14.     Plaintiff's health conditions, either alone, and/or in conjunction with each other, constituted disability under the ADA.

15.     On or about early July of 2015, the Defendant also hired Plaintiff's uncle, as a Restaurant Manager; shortly after this, Defendant's President, Maamon Mukhlis, saw a tattooed cross on Plaintiff's wrist, and asked if Plaintiff was Christian, to which Plaintiff responded in the affirmative, receiving the reply from Mukhlis:  "At least now I

4

know," or words to that effect, with Mukhlis otherwise taking this revelation in a very tough sort of way.

16. On or about late July 2015, Plaintiff made the existence of his mental conditions known to defendant, in the context of Plaintiff's request for reasonable accommodation of his conditions, in requesting that he please note be required to work so many overtime hours, on an ongoing basis, as the fatigue associated with the overtime was adversely affecting those conditions, in particular, his diagnosed bipolar disorder.

17. Among other things, Plaintiff showed a report from one of his medical providers to defendant's President, Maamon Mukhlis, and to the father of said president, Raad Mukhlis, and in response was told: "we don't need to see that; you're fine; you can do overtime."

18. After this, in addition to summarily dismissing the Plaintiff's request for an accommodation, Defendant started working Plaintiff more hours, always until closing; In addition, Mr. Mukhlis had a fundamental change in how he approached, and treated, your Plaintiff, as compared with almost every other similarly situated employee: abrupt, harsh, and not friendly at all, on a continuing basis.

19. In addition, shortly after the revelation that Plaintiff is a Christian was made to Mukhlis, Adam, from housekeeping, came to the kitchen and called Plaintiff a "Kheffir," [non-believer; no good], to which your Plaintiff replied: "It's not your business." Shortly after this, Plaintiff complained about this to Maamon Mukhlis, who did not seem in the least concerned about it.

20. Prior to, and during Plaintiff's employment by Defendant, Plaintiff had a monthly, regularly scheduled appointment with his medical provider, in relation to the

management of his above-referenced disability/ies, and Plaintiff scheduled one such monthly appointment on his day off, a Monday, on which date Defendant, through Mukhlis, found Plaintiff to be absent without excuse, as Plaintiff refused to miss the appointment, and this despite Mukhlis knowing: (a) that it was a regularly scheduled medical appointment; and (b) Plaintiff had previously scheduled it on his regular day off, for his condition. Defendant impermissibly and unnecessarily placed Plaintiff in a position of having to choose between his employment, and discipline, and proper medical management of his condition/s, under circumstances where at least one or more other employees were allowed to take their scheduled day off, despite a need for workers.

21. In addition, after learning of Plaintiff's medical conditions and Christian religion, Defendant, through Mukhlis and others, made a regular practice of forcing the Plaintiff to clean up after all other Cooks and even Assistant Cooks, as well as after himself, in the kitchen of the Levant Restaurant, on an ongoing basis, and otherwise eroded Plaintiff's authority, previously exercised as a First Cook, to tell other Assistant Cooks what to do, in the kitchen. However, after, on a regular basis, Mukhlis loudly chastised Plaintiff for failing to timely clean up after others in the kitchen, even though Plaintiff was to be the "First Cook," as well as because the widely accepted industry standard and practice is that each cook cleans up after him or herself. Plaintiff worked in a similar type of restaurant for four years, and was never similarly ordered to clean up after every other kitchen employee, as well as perform his own duties. The ongoing duty of following around, and cleaning up after other kitchen staff members, on an ongoing basis, was not shared by any other kitchen employee sharing the Plaintiff religious adherence and/or who suffered from any medical and/or mental conditions, and certainly

was not befitting of a position called "First Cook."  Plaintiff was even to clean up after Assistant Cooks who were training and/or learning the cuisine.  These additional duties, which his fellow cooks did not have, made performance of these, as well as Plaintiff's regular cook duties, particularly exhausting.

22.    One of Plaintiff's main duties, during his employment with Defendant, was cutting and preparation of the various meats which went into the various dishes served by Defendant.  Upon information and belief, the manner and method, as well as religious identity, of the persons/s who cut and prepared those meat/s, and/or drained any further blood therefrom,  was and is, of some religious significance and importance, to one or more management officials and/or customer/s of Defendant.

23.    Upon information and belief, up until the point at which Maamon Mukhlis found out Plaintiff is a Christian, upon information and belief, Mukhlis simply assumed that, since Plaintiff was from Egypt, that Plaintiff was a Muslim.

24.    Mukhlis (who is believed to be a Muslim, along with many other employees, both management and non-management, of Defendant) and/or others with an influence on the management of Defendant, were, upon information and belief, uncomfortable with the idea of continuing to do business, on an indefinite basis, with a Christian person employing Halal-style meat-cutting, draining and preparation methods, as Plaintiff was doing, among other cooking duties, and also as a result of Plaintiff's mental condition, and request for accommodation of that condition, Defendant started to seek a replacement for Plaintiff.

25.    Upon information and belief, after finding out of Plaintiff's Christian religion, Defendant moved certain foodstuffs which might have been  handled and/or

7

prepared by the Plaintiff, from the fridge, to the trash.

26.     After it was determined that both Plaintiff and his Uncle were Christians, staff at the restaurant were also instructed to make sure that certain items of kitchen equipment used by Plaintiff were disposed of and/or segregated, and further, that special, separate sets of dishes were issued and used, for purposes of Plaintiff and his Uncle to eat off of, at the restaurant. Such obvious indignities as this, as well as having to clean up after everyone else [even novice Assistant Cooks, as above] were treatments not similarly visited upon any non-disabled, Muslim and/or an employee not engaging in protected activity, as Plaintiff had.

27.     Plaintiff also approached Mukhlis in the office one day toward the end of July, 2015, and asked him: "[w]hat's wrong with me? How come I am the only cook you treat this way? Why do you shout only at me? Do you have some sort of discrimination going on with me?" Mukhlis's reply to this was: "That's my rules; if you don't like it, you're going to be fired."

28.     Soon thereafter, and on the evening of August 2, 2015, Defendant, through Mukhlis, made a practice of having a person Mukhlis referred to as his "Bodyguard", one "Adam" [Last Name Unknown; who is believed to be a Ghanaian-born Muslim],whose presence on the premises seemed to normally be limited to the Hookah lounge, come into the kitchen, also to bark orders at, eyeball, monitor, and order Plaintiff around, on an at-will basis, in an apparent attempt to make Plaintiff's life miserable, and/or possibly force him to leave. This particular evening, the bodyguard came into the kitchen around 10:00 p.m., with no other apparent purpose from management and/or Maamon Mukhlis, other than needlessly ordering the Plaintiff around, and chastising and embarrassing Plaintiff at

8

every turn, while instructing other other employees not to talk to Plaintiff, at all.  Other, non discrimination-opposing, and/or Muslim employees, who did not similarly suffer from a medical condition, were not treated  in this demeaning manner.

29.     Around  12:00 midnight that same night (now August 3$^{rd)}$, Plaintiff requested that one of the Assistant Cooks, a co-worker, clean up after himself, at which point the bodyguard again launched into Plaintiff, that he should not be requesting any other cook to clean up after himself, and that Plaintiff was to clean up after all others, at which point Plaintiff wearily tossed a sanitary kitchen rag towards the coworker; upon information and belief, the bodyguard saw the sanitary rag throw as an act of violence, and seeing this,immediately pounced upon the Plaintiff, and put Plaintiff in a headlock, and began to strangle him.

30.     At this point, and seeing this unfold, Maamon Mukhlis quickly brought in several other employees from the Hookah  (or "Shi Sha") lounge, as well as Maamon Mukhlis's father and mother [all believed to be Muslims], and they all joined into a bizarre, ritualistic mob slapping of the Plaintiff, who remained in the choking stranglehold of the bodyguard all the while; this ritualistic slapping or flaying of the Plaintiff, while he continued to be strangled by the bodyguard, continued for a minute or two, until Plaintiff thought he was going to die, at which point Plaintiff's uncle intervened, himself taking blows intended for Plaintiff, as he shielded Plaintiff from the blows of these other persons, and eventually a sufficient number dispersed, for the uncle to be able spirit Plaintiff away from the bodyguard, and others.

31.     Maamon Mukhlis immediately told Plaintiff that he was fired and not to come back, and Plaintiff left the premises, and immediately went and called 911, waiting

9

outside near the premises for the police to arrive; however, upon information and belief, no subsequent court action was initiated by the Fairfax County Police, as a result of the above-described sequence of events.

32.    Plaintiff requested that the police obtain video sequences of the while situation with the bodyguard, and being slapped, but upon information and belief, Defendant failed and refused, upon request, to provide this video to the Police, or to any other person.

33.    Days later, Defendant, through Maamon Mukhlis's brother (who was some sort of Vice-President related to finances of the company), provided a false explanation for this termination, by letter, claiming that it had been due to Plaintiff's misconduct activity, when in fact Plaintiff had not engaged in any misconduct, and the whole confrontation with the bodyguard has been the subject of a prolonged course of harassment, visited upon the Plaintiff.

34.    Upon information and belief, Defendant did not discipline, much less terminate the employment of, or otherwise accuse of misconduct, any other of Defendant's employees who participated in, the above-described assault by mob, on Plaintiff. Despite this, the behavior of said persons, in regard to Plaintiff, was willful and deliberate behaviors, causing a serious and imminent risk of injury and/or death to your Plaintiff, as well as putting their own personal safety in jeopardy, and possibly that of customers of the business as well. Defendant's alleged bases for Plaintiff's termination were manufactured by it, and/or false, and a pretext to cover for the raw discrimination, and religious retaliation and harassment he experienced,  at the hands of Defendant, both figuratively and literally, as described above.

35.    Upon information and belief, Plaintiff and/or Plaintiff's functions formerly performed for Defendant, was/were replaced by a person not similarly suffering from any disability, need for accommodation, work restrictions, and which replacement is, upon information and belief, a Muslim, and/or if Christian, not a practicing Christian.

36.    At all times referenced herein, and to this date, other than in periods shortly following said August 3, 2015 events, in which period Plaintiff's doctor stated he could not perform any work for some time, Plaintiff was, at all other times, qualified for the position he held with Defendant despite his condition (whether actual, having a record of disability, or being regarded as disabled), since he satisfied, and satisfied, the skill, experience and other job-related requirements for the position, as well as other positions at the Defendant entity.

37.    The Defendant's acts and practices described herein were intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected civil rights within the meaning of § 102(b) of the Civil Rights Restoration Act of 1991.

38.    All actions taken by the Defendant's supervisors and managers, and other employees of Defendant, as alleged herein, were taken in the course of, and within the scope of, their employment for and on behalf of the Defendant entity.

39.    The alleged reason for terminating the Plaintiff's employment, which was that he had allegedly engaged in some sort of misconduct, was a pretext for the real reason, namely, the intentional discrimination and retaliation practiced by Defendant described herein.

40.    As a consequence of Defendant entities' intentional discrimination and

11

retaliation based on Plaintiff's religion, disability and/or protected activities with respect to that religion and/or disability, Plaintiff has suffered, continues to suffer and will in the future suffer, great emotional distress, loss of lseep, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation and loss of enjoyment of life.

41. As a consequence of Defendant entities' actions, Plaintiff has lost wages and other financial incidents and benefits of her employment, and will continue to suffer such losses.

42. As a consequence of Defendant's actions and/or omissions, Plaintiff has incurred, and will continue to incur, attorney's fees, costs and expenses.

COUNT ONE – Non-Accommodation & Retaliatory Discharge under the ADA

43. Paragraphs 1 through 42 above are hereby incorporated and restated herein.

44. Defendant also used Plaintiff's disability (or Defendant's perception of Plaintiff as disabled), as well as his need to seek treatment for that disability, as well as Plaintiff's need and request for accommodation of that disability, as negative motivating factors in consideration of his job performance, attendance, and in Plaintiff's eventual dismissal from Defendants' employ.

45. Defendant otherwise failed to accommodate Plaintiff's disability, and in fact wholly failed to engage in anything resembling a good faith dialogue or back and forth, as to when and whether accommodation of Plaintiff's need for no overtime, could be accommodated; rather, Defendant obfuscated the accommodation request, denied the accommodation, and retaliated against the Plaintiff for requesting such an accommodation.

12

46.    Plaintiff was and is substantially limited in the major life activities of working for long periods of time and undergoing stressful situations, and thinking logically and Plaintiff had a record of such disability and substantial impairments and alternatively and/or conjunctively, the Defendant regarded him as being impaired, injured and/or disabled.  Among other things, as a result of his health conditions, Plaintiff suffered limitations to his performance of the major life activities of sequencing and assimilating thoughts efficiently, and short-term memory, all limited by Plaintiff's impairments, and/or worsened by stress and fatigue, and/or for which the Defendant regarded him as having during his employment.

47.    Defendant also engaged in a pattern and practice of acts which retaliated against the Plaintiff for seeking accommodation of his conditions, and as a direct and proximate result of this accommodation-seeking activity, also retaliated against Plaintiff, as described above.

48.    Defendant refused to accommodate Plaintiff's known disability, and instead acted upon its perception that it would be required to provide accommodations, or would be required to provide accommodations to Plaintiff's known disabilities, or the perceived disabilities of Plaintiff, in terminating Plaintiff's employment.

49.    Defendant also impermissibly and unnecessarily informed other employees with no need to know about the existence and nature of Plaintiff's mental disabilities.

50.    This discrimination and retaliation was with respect to the Plaintiff's terms, conditions and privileges of employment, and resulted in the termination of his employment with the Defendant, because of his disability and/or accommodation-seeking

behaviors, in respect of that disability, as perceived by the Defendant, and otherwise.

51.    The disciplinary measures enforced, if any, and terms of employment accorded to, similarly situated employees as Plaintiff, who suffered from no disability known to the Defendant, were much more favorable and/or much less severe, and yet those coworkers were not treated in the ill manner in which Plaintiff was treated, much less terminated, including, but not limited to, those participating in the gang assault on Plaintiff.

COUNT TWO – Disparate Treatment and Discharge Under Title VII

52.    Paragraphs 1 through 51 above are hereby incorporated and restated herein.

53.    Plaintiff's religion, Christian, was a motivating factor in many of the pre-discharge adverse measures taken against Plaintiff, as well as in Plaintiff's eventual discharge.

54.    Plaintiff's religion and religious practice were motivating factors in the unequal and bad treatment, and disciplinary action, he received from the Defendant, from the point at which he confirmed to Mukhlis that he was a Christian, to the date of his being attacked by Defendant's Muslim employees, and discharged.

55.    In seemingly any instance which was even remotely susceptible to derision, criticism, or berating of Plaintiff, Mukhlis and/or the bodyguard at his behest, took the opportunity to do this to Plaintiff, whereas his coworkers went untouched, and Mukhlis seemed to accept, at face value, any allegation or statement made by a Muslim or non-accommodation-seeking employee, over any such similar allegation, statement or opinion when made by Plaintiff.

56.     The disciplinary measures, if any, enforced by Mukhlis against Plaintiff's Muslim and/or non-practicing Christian coworkers, were less severe than those enforced against your Plaintiff, and those coworkers remained in Defendant's employ, even after Plaintiff was fired.

57.     Defendant, through Mukhlis himself and others, otherwise imposed conduct requirements and disciplinary standards upon Plaintiff, not imposed upon similarly situated Muslim, non-accommodation seeking employees, and otherwise singled out your Plaintiff for disparate discipline, and termination, based upon alleged behaviors and/or transgressions which at least one similarly situated employee, not in Plaintiff's protected category/ies, had engaged in, on more than one, if not frequent, occasion/s.  Mukhlis otherwise wholly ignored problematic behaviors and/or employment transgression of similarly situated, Muslim employees.

58.     By creating a hostile environment against the Plaintiff based upon his religion, as described above, Defendant discriminated against Plaintiff.

59.     The actions of Defendant were sufficiently wanton and reckless, with respect to Plaintiff's federally protected rights, so as to justify and merit an award of punitive and/or exemplary damages, against Defendant, in addition to other damages to which he may be entitled.

60.     As a direct and proximate result of the acts and practices of Defendant entity, and its agents and employees, as set forth herein, Plaintiff has suffered and continues to suffer injury and damages, including loss or denial of employment, past and future lost income, including wages, retirement benefits, interest, and other past and future pecuniary losses.

COUNT THREE – Retaliation & Retaliatory Discharge Under Title VII

61.     Paragraphs 1 through 60 above are hereby incorporated and restated herein.

62.     Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to retaliate against an employee for engaging in protected activity expressing opposition to discrimination, and/or activities colorably in the nature of discrimination.

63.     Plaintiff's discrimination complaint activity, to Mukhlis, regarding being called a Kheffir, or worthless non-believer (in response to which Mukhlis appears to have done nothing), as well as Plaintiff's plea to Mukhlis as to whether he had some sort of discrimination against Plaintiff, taking place a matter of days before Plaintiff's termination, all were protected activities, under Title VII.

64.     Defendant's staging of the bodyguard in the kitchen, to harass Plaintiff, and use of the dispute over Plaintiff cleaning up for every member of the kitchen staff, and Plaintiff's throwing of a sanitary rag, as a ruse to stage a gang attack on Plaintiff, and fire him, were taken in retaliation for Plaintiff's expressed opposition to Mukhlis, as being unlawful discrimination, the unlawful and demeaning manner in which he had been treated by Mukhlis and others, in his employment, up to that point; without which complaints, and the Defendant's retaliation for those complaints, Plaintiff would not have been terminated.

65.     Upon information and belief, while Plaintiff was employed with Defendant, Defendant employed at least one other Christian person, as an Assistant Cook, in the kitchen; however, upon information and belief, it is unknown whether said Assistant Cook ever let his religious affiliation be known to Mukhlis, and said other

16

Christian cook (who had no known medical condition) had never complained or raised any issue of discrimination with Mr. Mukhlis, and that other Assistant Cook was largely not involved in the preparation of meats.

66.    In addition, Plaintiff's religion, Christian, was a motivating factor in various disciplinary actions taken against Plaintiff, as described above, including, but not limited to, his termination, and the manner and method of the execution thereof.

67.    As a result of Defendant's violations of Title VII's prohibition on retaliation for protected activities, Plaintiff has suffered, and is suffering injuries, including past, present and future earnings, as well as considerable mental distress and exacerbation of his condition.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiff HANI FAROUK MARCO, prays for judgment to be entered against the Defendant, as follows:

(a)    Declaring that the acts and practices complained of herein are in violation of Plaintiff's rights secured by the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*;

(b)    declaring that the acts and practices complained of herein are in violation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended; and

(c)    issuing a permanent injunction enjoining Defendant from any conduct violating the Plaintiff's rights, as secured by the ADA and/or Title VII;

(d)    awarding Plaintiff back pay, front pay, prejudgment interest and appropriate recovery for lost employment benefits and other affirmative relief as may be appropriate, and for all other wages and benefits lost or denied, subject to proof at trial, in

17

the approximate amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00); and

(e)    awarding Plaintiff compensatory damages of FIFTY THOUSAND DOLLARS ( $ 50,000.00), under the ADA and/or Title VII, or such amount as is determined to be appropriate by the jury at a trial;

(f)    awarding Plaintiff punitive and/or exemplary damages, in the amount of FIFTY THOUSAND DOLLARS ($ 50,000.00), or such amount is otherwise deemed appropriate and sufficient, by the jury, taking account of the combined statutory awardable amounts, given the number of employees, to punish the Defendant, as well as deter, or set a negative example for, others who might be inclined to engage in the same and/or similar behaviors as the Defendant herein; and

(g)    awarding Plaintiff his reasonable attorney's fees and costs incurred in this action, together with expert witness fees and expenses;

(h)    awarding Plaintiff an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

(i)    awarding Plaintiff pre and post-judgment interest on awarded sums; and

(j)    ordering such other and further relief as is proper to the premises of law, equity and the facts of this case.

<u>Jury Demand</u>

Your plaintiff hereby demands trial by jury as to all claims so triable.

Respectfully submitted,

HANI FAROUK MARCO
By Counsel

18

Christopher R. Rau (VSB No. 34135)
Attorney for Plaintiff Hani Farouk Marco
Law Offices of Christopher R. Rau
6711 Lee Highway, Suite 220
Arlington, VA  22205-1940
(703) 536-1660 – Telephone
 CRRAU@AOL.COM – E-Mail

Date:  February 23, 2016